ASSURANCE COMPANY, AND ANELECT, 2011-14-67. Mr. Croson, when you're ready. Thank you, Your Honor. May it please the Court, BANCORP's claims claim patentable subject matter under the applicable precedent, including the Supreme Court's most recent pronouncement in Prometheus. In Prometheus, the Supreme Court affirmed that a process is not unpatentable merely because it contains a law of nature or mathematical algorithm. And I think it's important to look at what was at issue in Prometheus. In Prometheus, there was the law of nature that was identified was this correlation between metabolite levels and the toxicity of a certain drug. And there were essentially three steps involved there. There was the first step of administering the drug. Well, let's not deal with Prometheus. Let's start with your claims. You've got medium claims. Why doesn't CyberSource take care of that argument? Of the? CyberSource. Didn't we hold that medium claims are not eligible? Well, I don't think that CyberSource held categorically that they wouldn't be. I think that in CyberSource, it's distinguishable because CyberSource was essentially trying to claim any method for detecting fraud on gathered transaction and Internet address data. That's not here. We're not trying to claim any particular abstract idea. And I think that that's sort of essentially what the court was getting at in Prometheus as well is that in order for there to be a – for the abstract idea to be what is claimed, you essentially have to identify this abstract idea and then just say use it in some way. And that's essentially what went on in CyberSource. And the same is true for Dealertrack. In Dealertrack – Before we get – can I take you back, I guess, to Bilski? Okay. And the method in Bilski was to implement a certain formula that minimized risk for investment in the energy commodities market. And here, you've got a formula for tracking the value of insurance policies. I'm not seeing a difference between the claim here and the claim in Bilski with the exception that you add a computer. What am I missing? Well, I think that in Bilski, all they were really claiming was a particular hedging algorithm and then applying it in commodities trading. And here, there is no algorithm. There's no formula or basic concept that we are claiming and then just say use it in some way. We're not just flopping a computer onto something. And that is basically – Okay. So you're telling us what you're not doing. Why don't you tell us what you're doing then? Well, it's an administration system that has very specific steps that have to be done. And it's done in relation to a type of insurance policy. That's true. But it does not claim that type of insurance policy. And for example, I think that one of the times that we've been before the court was in relation to the MetLife case. And in that case, there was, as was at issue in the Hartford case, the particular term surrender value protected investment credits and calculating the surrender value protected investment credits. And the court in MetLife held that there was a very specific meaning to that. And you had to calculate those credits in a very specific way. And if you didn't calculate them, then you wouldn't meet this particular administration system. Aside from the subject matter that you're calculating, aren't you calculating and calculating and determining and calculating and storing and removing a value? I'm looking at Method Claim 9. Aren't these all mental steps? Well, first of all, I don't think that they're – well, I don't think as a practical matter you'd be able to do all those steps as claimed. Well, I couldn't. I couldn't. But aren't they mental steps? To use a calculator to do all these things is doing what the human brain probably isn't, for most of us, fast enough to do. But aren't they mental steps? Well, I think that the notion of calculating something could be done as a mental step. But I don't think that the notion that a series of steps, just because they may be mental steps or that you might be able to do one or some of them as a mental step alone is a bar to patentability. In fact, I think that's what Prometheus held is exactly not the case, that it is not a bar. Prometheus says that a process is not unpatentable merely because it contains a law of nature or a mathematical algorithm. And a series of steps is not in and of itself a mental idea. I think that that's the important distinction here. So they wiped out the non-mental steps, the administering and determining, and then said the rest of it was mental steps. Well, I think actually what they looked at, they looked at the mental step in Prometheus of determining whether there was a correlation that existed between the metabolites and the drug. And then once you eliminated that, then you looked at what was left. And what was left there was just administering the drug and then doing a test. And it said that on top of this law of nature, that it was just these routine steps that were added to that. And that you were essentially not even doing anything. I mean, you didn't even have to do anything once you did the step of determining whether there was a need. If we were to disagree with you on the method claims and to really not see any daylight between that and Belsky or Prometheus, is there a separate and distinct argument to be made with respect to the systems claims? Well, I think there is, Your Honor. And I think that throughout the cases that the notion of something tangible existing has been viewed as important. And here what we've claimed in the system claims is a specific computer system that would be programmed to conduct the various steps that are involved. But is there anything novel about that? I mean, Justice Breyer says in Prometheus that you look at what's been added, this post-solution activity, and you say, is it in and of itself a specific advance? Is that what you're telling me is true of the system claims here? Yeah, absolutely. I think that there was no system that existed that could administer this insurance policy before. That's undisputed, Your Honor. And all that they added in Prometheus was just administering a drug and measuring metabolite levels. Just two very basic things that any doctor could do. And here there are steps that I don't think there's any dispute were ever done. There's no dispute that calculating surrender value protected investment credits. I don't think there's any dispute that that was done. And additionally, the system involves tracking both the book value and market value of this policy. I don't think that there's any dispute that that wasn't done. Well, if you look through the specification, it seems to me that there's nothing that describes how these additional physical components of the system claim should be implemented. I mean, instead, all the descriptions explain how the map works. Am I missing something in the specification? Well, I mean, there's no computer programming claimed in there, if that's what you're referring to. I mean, but I think that that would be true of many claims that would relate to computer. I mean, there's no requirement that a patent include source code. And if that was the standard, then... I appreciate what you're saying, but our play here is different. I've assumed in my question that the method claims go down. So then we've got – they're close, except the system claims are very close to the method claims. The Supreme Court has advised us repeatedly that we can't elevate form over substance. So I'm trying to glean what it is that makes these – what specifically makes these system claims patentable, assuming the method claims go down. Right. Well, but I also think that there's only – I think there's only two claims that are method claims that aren't even specifically tied to a computer because there's several of them – the method of claim nine using a computer. And so it's not that – I think that those would be similarly tied to a computer in the same way that the computer system does. But I would submit, Your Honor, that what Prometheus tells us is that we don't – you don't just look at whether there are a series of mental steps involved. You look at whether, as a whole, you have something that is a law – that is an abstract idea, and then you just say apply. I mean, essentially, I think that in this situation, in order for Prometheus to apply here, we would have had to have identified stable value protected investment insurance and COLE SVP and then just said administer it. And that's essentially what the court said happened in Prometheus. And, Your Honor, there is actually – it's Sun Life's burden here to prove that we have patented an abstract idea, that we have preempted all other – all ways of doing it, and they have never done that. And, in fact, they've never even settled on what the abstract idea is. It's not even clear what we're arguing against here. I mean, they've said – in some instances, they've said it's an algorithm for managing a particular type of investment, which would seem that it's – the series of steps is the algorithm. But then at other times, they point to an SVP investment algorithm. At other times, they point to BOLE SVP in and of itself. Sometimes they say it's a series of mathematical calculations. Your Honor, before you use up your time, I have a question for you. What authority do you have that reversal of a district court entitles a party to engage in judge shopping? Well, Your Honor, I think that the authority that we've cited says that if there's an appearance of bias that – And the appearance of bias is that somebody was reversed in part and affirmed in part on some cases? No, I don't think that it would be just that. I don't think it would be just that. I think we – You say that the district court judge credited the other side's expert witness? That's a basis? I don't think that in and of itself, individually, those things would be sufficient, I think. But what happened here, and obviously part of it would depend on what happens in this disposition, is that we had an instance where we reversed once. And in that instance, the judge credited their expert over ours but made a credibility determination. And then later on, granted us – Well, that speaks to the quality of your expert rather than the quality of the judge, doesn't it? Well, you know, I'm not making any comment on the quality of the judge, certainly. I mean, but there does seem to be a bias here against – Well, the assertion of bias certainly does. Well, there does seem to be here, Your Honor, a bias against our patent and that twice that we were – Do you think it's because it's lost? The first time took their expert say-so, made a credibility, the second time did the exact same thing, and then also – Was there harsh or pejorative language used that indicated bias? Was there some sort of overtone or undertone? I can't point to any specific accusations or pejorative language. I don't think that there was disrespectful language towards us. But, you know, we've been litigating this case for essentially 12 years, and there's been two reversals on very similar issues regarding the very same thing. And now – and then additionally with two instances where they've just taken – she's taken the word of the other side, another instance where she abused her discretion in not allowing us discovery. It just appears to us, Your Honor, that we're – she's not – the judge is not letting us try our patent case, and that has been continually the case throughout, and that's why we're asking for reassignment, and that's where the appearance of bias comes from our perspective. Do you want to save the rebuttal time? Yes, Your Honor. And we will give you five minutes, and if your opponent needs three more minutes, we'll give him that. Thank you. Is it Mr. Lowery for the W instead of a U, and therefore a different pronunciation? I am grateful for that, Your Honor, because when I very first held argument, Your Honor made a similar comment, and it relieves my nerves, so I'm very grateful for the reminder. Why isn't a medium claim that – besides structure, calculators, and a system, particularly a system claim that even includes digital storage, which is physical, why aren't these tangible and patent-eligible subject matter? Because there is nothing in there the same as was the case in Prometheus, as it turns out, by the Supreme Court, the same as in the case of Borg Properties, the same as in the case in Dealer Tracker Cybersource. There's nothing in there that's not conventional, known, ordinary. It's digital storage. It's use of a computer. That's 102 and 103. But it's also Section 101, as the Supreme Court has instructed courts to apply it, because Section 101 is a legal question, and it's one where you can look at it, and it might be that there are cases that involve some intricacies. This doesn't happen to be one of them, because there is nothing in this patent, there is nothing in these claims that is anything other than simply apply it to a computer. So if I could – But a lot of the – I mean, I think all the other cases you referred to at best are method claims, process claims. I'm not sure we've had a system claim before which is indisputably contained physical hardware. I'm having a hard time figuring out whether that makes a difference. I think it does, Your Honor. I'm sorry, I think it does not make a difference. I think that the courts have addressed that. Even if you look at – I understand Benson may be a method claim, but Benson actually says it shouldn't matter which way you write it, and it actually required a very specific piece of hardware, a shift register. So the shift registers sit there. It has eight little places to hold digital bits. So it is a form of digital storage. And, in fact, a specific form of digital storage, and it has a specific structure beyond ordinary digital storage that allows you to shift the bits over. And it used that shift register in order to perform a calculation, which was conversion from binary code to decimal to binary, if I recall correctly. And that is a specific machine, and the Supreme Court said it doesn't matter if it's a specific machine or not. Fluke recited storing the alarm condition a limit. There's going to be discussions of storage in there. I can't – Bilski talks about implementation on a computer. I'm trying to imagine a situation where those claims get rewritten, as happened here, to say a system for managing risk comprising an initiator to initiate a series of transactions. And suddenly Bilski becomes patentable. It just – I don't think that there's any way that the Supreme Court, or this court, would think that that would be the right way to go about it. Now, Section 112 says that specifications shall conclude with claims in which the inventor specifies what he regards as his invention. Yes, sir. Doesn't that mean we shouldn't look through an apparatus claim and say, well, this is just a method claim in disguise? I think that that is correct, and I think that that is, in essence, what the courts have done and will be doing with these. It's not – as the Supreme Court has instructed, this is not like a nose of wax. It's not supposed to be a game. I look at this claim, and I don't actually see a system claim. What I see is a method claim worded with systems. And, in fact, the specification is really interesting and illuminating on this. Your Honor, I referred to the specification before. In the background section, it talks about non-qualified deferred compensation plans as one tax strategy. It's not dissimilar, maybe, from poor properties in that that was the approach. And then it talks about solving a problem with a different thing, which is these corporate-owned life insurance policies. There's an issue with that. This is the background section. The issue is fluctuations because these are life insurance companies. And due to those fluctuations, as the life insurance companies, you do the surrender value protection investment or stable value protection. It has, I guess, been referred to either way. And what that does is you have the underlying securities, and you smooth it. So you track the current value of the fund, and then there's a value of an underlying security, which may go up and down. So the idea is to smooth it. Looking at the claims, we have method claims, system claims, medium claims, medium, singular claims. They're all reshuffling and redrafting the same thing. Yes, Your Honor. And the Supreme Court might eventually do this and just wipe them all away and say it's all the same thing. But for us, 112... I think the Supreme Court has done that. ...comprising a calculator, a calculator, a calculator, and digital storage. Well, let's be clear about what the patent actually talks about for that because what the patent says, if you look at columns in the 037 patent, column 6, line 42 through the top of column 8, there's a description of a computer system. It's the one shown in figure 1, which looks like this, Your Honor. It's the one you find in any desktop. There is absolutely no discussion of any kind about anything special. This is the same computer that does a word processor. The patent then goes on to talk about non-qualified deferred compensation plans, which is irrelevant here. Some life doesn't do that. The claims aren't directed to that. And it's not until... I'm sorry. Unfortunately, the column numbers aren't the same in the two patents. It's not until column 8, line 13, it talks about the non-qualified plan. You're on the 037 patent. I'm on the 037. So the first section from the beginning of the detailed description through column 8, line 13, is a generic discussion of a computer, like shown in figure 1 and you find in anybody's office well before and after, including today. There's nothing special. There's nothing particular to life insurance policies. You could find this description anywhere. Below that line, starting in figures 2A and 2B, is the discussion of non-qualified deferred compensation, which is irrelevant. But you keep getting back to the subject matter, and I keep getting back to claims. I'm going to get... Because the question here, Your Honor, and I think it was a fair one, is what is this? Is this really a method claim? And by the way, just to be clear, section 101, calling it a machine or a tangible thing, is not some talisman to make a patentable subject matter. Section 101 says... And yet you say that you're conceding that the court should apply all of your opponent's claim constructions. I think that's correct, and I think it makes no difference because the only identified claim constructions are, one, whether it's used on a computer, and there are some claims, at least, that certainly are referring specifically to a computer, and two, that we argue that certain mathematical formulas are part of the term calculating and they shouldn't be. That only makes it more abstract, and so if you agree with them on that particular point, it only moves it more into section 101, patent ineligible. Returning to the point, though, section 101 says process claims as well as machine and manufacturer claims. The same exception applies, and we need to see, as the Supreme Court is instructed over and over again, what is here? Is this fluke where, yeah, I see a bunch of stuff in the real world. I mean, there's nothing more real world than safety issues in a petrochemical plant, but the thing that's here is the algorithm, the mental steps, not the physical plant. Same with Prometheus. We see things happening in the real world actually curing people. It doesn't get more real than that. Here, we don't even have that reality. This is like for properties. The most you have is moving money, and if we look at what's disclosed in the specification, when you get to the part that talks about everything that's in these claim limitations, you're not going to find policy generator in this patent application as filed. You're not going to find any of those terms in this patent application. But what you're asking us to do is intention. Is intention, is it not, with ultramercial? I mean, I understand ultramercial is arguably in play here, but let's assume this court were to reaffirm its original holding in ultramercial, that the intention with what you're advocating that we do here, would it not? There is, I suppose there's always going to be some tension between anything that finds something 101 eligible against something that's ineligible, but I don't think on the actual facts of ultramercial there is any tension. Ultramercial was a system that was actually doing things. There were product sales going on. There was back and forth. There was technology that was required that was new and different in the internet age. If you look at these claims and you say, let's take out the life insurance policy, there's nothing left. I mean, there's no limitation left. There's not a policy generator if we're taking out the concept of the life insurance policy. There's not calculating surrender value protection investment credits if there's not a life insurance policy. So all of these limitations are only, and in addition, there may be additional structures in ultramercial that aren't present in this case. If you read the specification, there's a generic description of the personal computer up front, and if the court reads the description of everything, all the generation of the policy and everything, the word computer I don't think even appears. It may say processing and it may say storing, but there's nothing about how that's done or any computer structure to do that or any challenge that needs to be overcome. There's no suggestion anywhere from any of that. If the word computer had appeared in all of these claims, including method claims, would it have made a difference? I don't think so. I think they're all patent ineligible, and I think the same would be true in Bilski. The same was true in DealerTrack. The same was true in Port Properties. Throwing in the word computer there, whether it's a method claim or a system claim, unless there's something different. So if it makes a computer work better, as in ResearchCorp, that could make a difference. If it's something where you're creating a new kind of computer structure in order to facilitate something happening, that might make a difference. Does an ordinary computer program to perform certain mental steps? Is it still doing mental steps? It is. Well, that's kind of metaphysical, so I could say probably yes, actually, depending on what you're thinking of as a mental step. But it's surely the equivalent of a mental step because it's the kind of thing, which comes out, I think, in DealerTrack and maybe the earlier CERF case, that all you're doing is using a computer for what computers have been known to do, either to automate something, as in Fluke, or to do it faster. Is that what we've been talking about in some of the cases, is post-solution activity, right? No. Those things would not necessarily be post-solution activity. If you're making the computer work better, like in RCT, it's printed better. That's not necessarily. One might differ as to whether it should be patentable or not. It's not at play here because I think it's pretty different on the facts. But in Ultramercial, also, that could be post-solution activity. But even if it's not, it doesn't have bearing on this one because there's nothing here that's different than what was out there before. And you can tell that reading the specification, which describes a generic computer as opposed to a generic computer irrelevant with all the life insurance stuff, and then describes the computer structure. So, for example, if one looks at State Street, that's interesting because one might argue there's different computer structures required to manage this. Is that patentable? One might argue it either way. It doesn't matter here because we don't even have that here. For RCT, there was a different, better-performing computer device, a printer. That might be interesting for patentability. Maybe it doesn't make it patentable. It doesn't matter because we don't have that here. All we have here, if one reads this description, is the calculation of the normal running of a life insurance investment policy that has the surrender value protection component. It can't be done otherwise. And to be clear on that, too, were there any other questions about that? The Patent Office, when it allowed the claims, didn't say that there was anything new about the administration. The reasons for allowance in the second patent were clearly we tracked two different values, the underlying security and the targeted return. That's just the abstract idea of the surrender value protection investment credit. So the Patent Office itself established this is not a system claim. This is not a new computer that's different in kind from the kinds of computers before. It's not a better-working computer. What this is is using a computer to do the abstract idea. Did the district court err by not requiring clear and convincing evidence in a summary case? No, for two reasons, Your Honor.  What about MySpace? MySpace, if you look carefully at the opinion, what Judge Plager was saying was if it's really clear that it's not patentable, maybe you should go ahead and do that early, but otherwise maybe we should look at these other issues. He wasn't actually saying clear and convincing in that passage in an evidentiary sense. He was talking about it more as a prudential thing. I think that's a very bad idea. The cost of patent litigation is profound. So to send this back for $5 million on each side, tremendous court resources, trying 102 and 103 only to have it knocked out at 101 later, I think I would respectfully disagree with that approach. But that's what the judge was talking about. He wasn't saying it converts it to a matter of fact. And similarly, the Markman jurisprudence on the legal question of claim construction, I think, is very clear. And you don't even want to hear from the experts on that stuff except maybe for background or unusual situations. And I think also, if Your Honor is looking at the reply brief, because we weren't heard on that, it's also misciting the Microsoft case. If one's looking at obviousness, well, that is a legal question, but it has underlying factual questions. So, of course, there's a clear and convincing standard for the underlying factual questions, and they sometimes all get merged into one big ball and handed to the jury. There is no underlying factual question in Markman 101. But thank you, Your Honor. And I think, I guess I'm always happy to answer any other questions, but I think I would conclude by noting that I just don't see that there could be a way, especially reading the specification, that this case could be distinguished from the Bilski case. You could say it requires complex computer programming. My goodness, look at the Dependent Claim 8 in Bilski. It's got Monte Carlo simulation. It's got massive amounts of data required. It doesn't matter. And saying, do that on a computer, really shouldn't result in a different outcome. In fact, that would be inconsistent with this court's jurisprudence, and I think the Supreme Court, particularly Benson, as well. Thank you, Mr. Lowry. Thank you, Your Honor. Thank you. A few points. First, going back to the clear and convincing evidence point. Absolutely, I think that clear and convincing evidence is the appropriate standard. Simply because something is a legal issue doesn't mean that clear and convincing evidence is not appropriate. Indefiniteness is a legal issue, and that needs to be shown by clear and convincing evidence. And obviousness is a legal issue, and I've never seen any cases suggesting that the legal aspect of that doesn't need to be shown by clear and convincing evidence. In fact, it's almost universally referred to both— there's never a distinction made between the legal aspect and the factual aspect in terms of the burden and what needs to be shown. In other words, clear and convincing evidence, even if evidence isn't at issue? Well, I think—well, the only reason there isn't any evidence at issue here, Your Honor, is that sunlight hasn't provided any. They've provided no evidence at all other than conclusions to say some of the critical issues here. For example, one of the things that Prometheus talks about is that if you have this— now, there was a natural phenomenon here. I guess what's at issue here is an abstract idea, is that you have to look and see whether you're essentially covering all uses of that abstract idea. There is not a shred of proof that we have preempted— even assuming that BOLI SVP is the abstract idea here, which I'll get to in a second— even assuming that that's the abstract idea, there's not a shred of proof that we've actually preempted that. In fact, while sunlight has said that they don't actually use the system, they say they don't infringe our patent, even though there's no dispute that they offer BOLI SVP and offer administration to their policies. The same was true with Hartford. And in fact, in Hartford, Hartford used the same expert that sunlight has, and he said in saying that Hartford's system was different, that there are significant differences between Bancorp's system and what Hartford used. And MetLife said they didn't infringe, and in particular, did not meet the specific element as construed by this court in MetLife, the calculating surrender value-protected investment credits, which is a critical component here that deals with what is undisputedly a new type of insurance policy at the time and how you administer it. If you don't administer it in that particular way as held by this court, then you don't infringe. And there's not a shred of evidence that we have preempted all uses. And that distinguishes us from Prometheus. It distinguishes us from CyberSource and DealerTrack. And there was some talk of Benson and this binary coding that was there. Well, that was the specific invention there, was this very specific formula. And you could only use really practically that formula in connection with the computers that were at issue there. And here, they have not pointed to anything like that that we have supposedly claimed. And, in fact, even throughout the argument, we've heard many different things that are supposedly the policy or supposedly the abstract idea. Is it an insurance policy? I think we heard that. We heard calculating two sets of value, that that's also the abstract idea. And, you know, again, that's the laundry list that I listed before. If they're going to show that our patents are unpatentable, it is their burden to demonstrate both an abstract idea and that we have preempted all abstract ideas. And they have absolutely not done that in this case. And we would submit, Your Honor, that our preempted all abstract ideas. I'm sorry, I misspoke. Preempted all use of an abstract idea that they have identified. And here, they haven't identified any particular abstract idea. They've pointed to many things that they've concluded are abstract ideas, but they have not provided a shred of proof that we have preempted all of these. In fact, it's inconsistent with their own assertion that they don't even use our system. And with that, Your Honor, unless you have any particular questions, I think that's it. Thank you, Mr. Perlston. We'll take the case under advisement.